LIEMAN (HEYE v.).　See Case No. 6,445a.

## Case No. 8,341.
### LIENOW v. PITCAIRN et al.
[2 Paine, 517.] [1]
#### Circuit Court, D. Connecticut.[2]

BILLS AND NOTES—LETTER OF CREDIT—GUARANTOR.

1. A letter of credit given by the writer of the letter on himself, as an accommodation,

---

[1] [Reported by Elijah Paine. Jr.. Esq.]
[2] [Date not given. 2 Paine includes cases from 1827 to 1840.]

does not create any debt or contract between the immediate parties to it, for the payment of a sum of money direct; but is only an authority to create a debt by a draft on the party giving it, and an engagement on his part to accept and pay such draft. The latter stands in the character of surety or guarantor for the payment of drafts to the extent of the credit given, if the former chooses to avail himself of it.

2. If the person receiving the letter of credit decline to avail himself of it, it will be a waiver and abandonment of the credit given.

3. The party giving the letter of credit has a right to claim a strict compliance with his engagement.

This was a motion for a new trial on the ground of misdirection in the charge of the court to the jury.[3] The material facts in the cause were briefly these: The plaintiff [Henry Lienow] having in the hands of Samuel Williams, of London, funds to the amount of five hundred pounds sterling, and having occasion for money at Hamburgh and elsewhere in his travels upon the continent, procured from Williams a letter of credit, dated 14th July, 1825, addressed to the defendants [Pitcairn & Brodie] at Hamburgh, requesting them to furnish the plaintiff with money, at Hamburgh, and a credit at Stralsund to the extent of four hundred pounds, and to draw upon him (Williams) for their reimbursement. This letter of credit was presented by the plaintiff to the defendants, upon which they advanced to him £150, and gave him a letter of credit on themselves, dated the 28th July, 1825, at Hamburgh, in which they say: "We hereby accredit you with us to the extent of three thousand six hundred and six marks and twelve shillings, Hamburg Banco, for which sum, or any part, your drafts on us will meet ready honor, on account of the credit opened you with us by our mutual friend, Samuel Williams, of London." The plaintiff, by a letter dated the 21st August, 1825, at Stralsund, addressed to Samuel Williams, informed him that he should leave there the next day for Southern Germany, and mentioning that he had presented his (Williams') letter of credit on the defendants for the partial payment of £150, for which he gave his receipt; and that if he should be in want of funds on the continent, he should draw upon him (Williams). The plaintiff, after his arrival at Paris, and on the 30th of October, 1825, wrote to the defendants that he had seen by the public papers that Williams had failed; and referring to their letter of credit of the 28th of July, informed them that he should shortly be in want of funds, and should avail himself of his credit on them. The answer to this letter, dated the 7th of November, 1825, (which was introduced in evidence on the part of the plaintiff,) contained the following statement: "Mr. Williams' letter of credit, to which ours re-

ferred, was for a credit at Stralsund, and money here, (Hamburgh;) the latter we furnished, and the former you informed us would not be required after you went to Paris, whence you would draw direct. His (Williams') failure annuls all credit opened on his account, and we are sorry to be obliged to say we cannot accept any of your bills." The plaintiff, after his return to Boston, on the 9th of January, 1826, drew on the defendants for three thousand six hundred and six marks and twelve shillings, Hamburgh Banco, in favor of Messrs. Godeffray & Son, which the defendants refused to accept. Upon this evidence the court below charged the jury that the plaintiff was not entitled to recover.

THOMPSON, Circuit Justice. From this statement of the case it is very clear that none of the plaintiff's funds have, in point of fact, come into the hands of the defendants, and if they are to be made responsible for the loss occasioned by the failure of Williams, it ought to be thrown upon them by reason of some well-settled rule of law. This letter of credit given by the defendants to the plaintiff, did not create any debt or contract between the immediate parties to it, for the payment of a sum of money direct; it was only an authority to create a debt by a draft on the defendants, and an engagement on their part to accept and pay such draft. The defendants, therefore, stand in the character of sureties or guarantors of the payment of the plaintiff's drafts to the extent of the credit given, if the plaintiff choose to avail himself of it. If A. should give to B. a letter of credit upon a mercantile house, for goods to a given amount, and B. did not see fit to avail himself of it, this would surely not give him any cause of action against A., and it could make no difference whether A. had collateral security given to him or not. From the nature of such transactions it must necessarily rest in the discretion of the person who receives the letter of credit. whether he will avail himself of it or not; he may, therefore, relinquish or abandon the authority or right which he had to use the credit given him by such letter. The letter of credit is given to enable the party receiving it to contract a debt with some third person, under the guaranty of the person giving the letter. The bill drawn by the plaintiff, after his return to Boston, and with full knowledge of the failure of Williams, cannot affect the rights of the present parties, or alter the nature of this transaction; this was evidently done as a mere matter of form. There is nothing to warrant the conclusion that the drawers took this bill upon the credit of the defendants' letter, or that any consideration was paid for it; and, indeed, the action itself shows that the interest of no third party is involved in the transaction.

The question then resolves itself into the inquiry whether the plaintiff had not, before

---

[3] For rules, and numerous cases relative to new trial on the ground of misdirection of the judge, see 3 Grah. & W. New Trials, p. 705 et seq.

he heard of the failure of Williams, so far relinquished all right to avail himself of this letter of credit, as to preclude him from throwing the loss upon the defendants. The letter, upon its face, assumes to guarantee the plaintiff's drafts, on account of the credit opened by Williams; and his letter to the defendants shows that the credit which the plaintiff wanted was at Stralsund.[4] The undertaking of the defendants was, therefore, to give the plaintiff such credit at that place, and not at any other place where he might

see fit to draw or make his bills payable. This might have been a matter of some importance to them; and if they stand in the character of sureties, they have a right to claim a strict compliance with their engagement. But, independent of this, it is very clear, from the evidence, that this credit was to be used at Stralsund, and if not used there, it was not to be used at all.

The defendants' letter to the plaintiff, of the 7th of November, shows very satisfactorily that such was the understanding of the par-

---

[4] In England it seems to be at this time questionable whether a party who advances money upon it can sustain an action upon it. Russell v. Wiggin [Case No. 12,165]; Bank of Ireland v. Archer, 11 Mees. & W. 383. The reason assigned is, that there is no privity of contract between them. It is there assumed that it is only a contract between the drawer of the letter and the person for whose benefit it is drawn. But in this country the contrary doctrine is well settled. Letters of credit are of two kinds, general and special. A special letter of credit is addressed to a particular individual by name, and is confined to him, and gives no other person a right to act upon it. A general letter, on the contrary, is addressed to any and every person, and, therefore, gives any person to whom it may be shown, authority to advance upon its credit. A privity of contract springs up between him and the drawer of the letter, and it becomes in legal effect the same as if addressed to him by name. Russell v. Wiggin [supra]; 12 Mass. 154; 2 Metc. [Mass.] 381; 12 Wend. 393; [Adams v. Jones] 12 Pet. [37 U. S.] 207; Birckhead v. Brown, 5 Hill, 641; Story, Bills. See Beam. Lex. Mer. 444. But these general letters of credit may be subdivided into two kinds, those that contemplate a single transaction, and those that contemplate an open and continued credit, embracing several transactions. In the latter case they are not generally confined to transactions with a single individual; but if the nature of the business which the letter of credit was intended to facilitate, requires it, different individuals are authorized to make advances upon it, and it then becomes a several contract with each individual to the amount advanced by him. Thus a general letter of credit may be issued to a person to enable him to purchase goods in the city of New York, for a country store. The very nature of the business requires him to deal with different individuals and houses, in order to obtain the necessary assortment. It has never, as I am aware, been questioned that the guarantor might be bound to several persons who should furnish goods upon the credit of the letter. So letters are issued by commission houses in the city, to enable persons to purchase produce in the Western states. The money is obtained from the local banks in those states by drafts drawn upon those houses, and upon the faith of the letters of credit. It may often happen that a single bank cannot furnish the requisite amount, or it may be necessary to use the money in different and distant localities. I am not aware of any question ever having been raised as to the authority of different banks to act upon the same letter of credit. It is absolutely necessary that such should be the effect of them, in order to facilitate the commerce of the country, and to carry out the object of the parties in issuing the letters of credit. Birckhead v. Brown, 5 Hill, 641; Russell v. Wiggin [supra]. Pratt, J., delivering the opinion of the court in Union Bank v. Coster, 3 Comst. [3 N. Y.] 203.

Letters of credit usually contain a request that some one will advance money, or sell goods to a third person, and an undertaking on the part of the writer that the debt which may be con-

tracted by the third person in pursuance of the request shall be duly paid. These letters have been divided into two classes, general and special. They are general when addressed to any and all persons, without naming any one in particular. They are special when addressed to a particular individual or firm by name. When the letter is addressed to all persons, it is in effect a request made to each and every one of them, and any individual may accept and act upon the proposition contained in it; and on his doing so, that which was before indefinite and at large, becomes definite and fixed: a contract immediately springs up between the person making the advance and the writer of the letter, and it is thenceforward the same thing in legal effect as though the name of the former had been inserted in the letter at the beginning. I can see no difficulty in this, for there is plainly a privity of contract between the parties. Watson v. McLaren, 19 Wend. 557, and 26 Wend. 425, in error; Boyce v. Edwards, 4 Wheat. [17 U. S.] 111; Adams v. Jones, 12 Pet. [37 U. S.] 207; Lawrason v. Mason, 3 Cranch [7 U. S.] 492; Bradley v. Cary, 8 Greenl. 234; Russell v. Wiggin [supra]; and same case cited in Story, Bills, 546, note. And see Carnegie v. Morrison, 2 Metc. [Mass.] 381. When the letter is special, or, in other words, addressed to a particular individual, he alone has the right to act upon and acquire rights under it. If any one else attempts to accept and act upon the proposition contained in the letter, he comes in as a mere volunteer, and he cannot by thus thrusting himself forward create any legal obligation on the part of the writer. There has been no communication, and is no privity of contract between them. Robbins v. Bingham, 4 Johns. 476; Walsh v. Bailie, 10 Johns. 180.

In Russell v. Wiggin [supra] and cited in Story, Bills, 546, note, the defendants gave a letter of credit to Breed, by which they engaged to honor the bills which might be drawn in India by Breed's agent. The agent drew bills on the defendants, which the plaintiffs took on the faith of the letter. The defendants refused to accept when the bills were presented, and the plaintiffs thereupon sued and recovered on the letter of credit. Mr. Justice Story went mainly upon the ground that the letter amounted to a virtual acceptance of the bills. If that be so, and the action had been brought upon the bills themselves, there could be no good objection to the recovery. But I should find great difficulty in saying that the plaintiffs could sue on the letter of credit, for the reason that they were not parties to it. I should agree with the four eminent English barristers who gave their opinion that by the law of England the action would not lie, because there was no privity of contract between the parties. But it is not necessary to pass upon that question, for here the defendants never agreed with any one that they would accept and pay bills. They only requested Brown & Co. to accept, and undertook to keep them indemnified. That was not a negotiable promise upon which the plaintiffs can sue. The case of Carnegie v. Morrison, 2 Metc. [Mass.] 381, stands much upon the same principle with the one which has just been noticed.

ties; and this letter being introduced by the plaintiff, is competent evidence for the defendants, so far as it makes in their favor as well as against them. They there say: "You informed us you should not require the letter of credit after you went to Paris, whence you would draw direct." That is, direct on Williams. This fact, as also this construction of the letter, is fully corroborated by that of the plaintiff to Williams of the 21st of August, at Stralsund, where, he says, he had presented his letter of credit to the defendants for a partial payment of £150; and that, if he should be in want of funds on the continent, he should draw direct on him (Williams). If the plaintiff had supposed that his funds, to the amount of £400, had been transferred from Williams to the defendants, where the necessity or propriety of their writing him? This letter will not admit of the construction that he should draw on account of other funds which he had in Williams' hands; for, if that had been the case, it was altogether irrelevant and unimportant to state that he had only drawn for a partial payment on the defendants. This letter admits of no other reasonable interpretation than that he had drawn on the defendants for £150, and that for the residue of the £400, he should draw direct on him, (Williams,) and not circuitously through the defendants, if he should want any more funds on the continent. After this letter, Williams could not have transferred these funds to the defendants, and thereby exonerated himself from payment to the plaintiff. Williams had in no way become absolutely responsible to the defendants for the amount of the £400. He had engaged to become security or responsible for advances to the plaintiff to that amount; but until such advances were made, or the defendants had made themselves answerable therefor, they could have no claim upon Williams; he had only authorized them to draw on him for reimbursement, which necessarily presupposes advances to have been made by them to the plaintiff. The plaintiff had undoubtedly a right to waive or relinquish the benefit or use of this letter of credit; and whether he had done so or not was submitted to the jury; and I see no ground upon which that verdict ought to be disturbed. Motion for a new trial denied.

---

LIEUTENANT ADMIRAL CALLOMBERG, The (LAWRENCE v.). See Case No. 8,-139.

LIFE ASS'N OF AMERICA (STELLWAGEN v.). See Case No. 13,359.

LIFE ASS'N OF AMERICA (WILSON v.). See Case No. 17,818.

LIFE INS. CO. (HOLLOMAN v.). See Case No. 6,623.

LIFE INS. CO. (PARTRIDGE v.). See Case No. 10,786

LIFE INS. CO. (TERRY v.). See Case No. 13,839.